## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HARLEY CARRANZA Individually** | § | |
| **And On Behalf of All Similarly Situated** | § | |
| **Persons** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 4:15-cv-3631** |
| | § | |
| **v.** | § | |
| | § | |
| **RED RIVER OILFIELD SERVICES,** | § | |
| **LLC d/b/a RED RIVER** | § | |
| **TECHNICAL SERVICES LLC,** | § | |
| | § | |
| **Defendant.** | § | **JURY DEMANDED** |

## MEMORANDUM IN SUPPORT OF
## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

*/s/ Marcia N. Jackson*
Marcia N. Jackson
State Bar No. 24008411
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
Email: marcia.jackson@wickphillips.com

Lauren K. Drawhorn
State Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
Email: lauren.drawhorn@wickphillips.com

***ATTORNEYS FOR DEFENDANT RED
RIVER OILFIELD SERVICES, LLC d/b/a
RED RIVER TECHNICAL SERVICES LLC***

# TABLE OF CONTENTS

I.     STATEMENT OF NATURE AND STAGE OF THIS CASE ............................... 1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

III.   SUMMARY OF UNDISPUTED MATERIAL FACTS ......................................... 3

     A.    Red River Oilfield Services............................................................ 3

     B.    Red River Hired Plaintiff Harley Carranza As A Salaried
           Professional To Run Its South Texas Operations............................ 3

     C.    Plaintiff Hired The Remaining Members of the "South Texas Crew." ........ 4

     D.    Plaintiff's Job Duties As A Lead Drill Pipe Inspector. ................................. 6

     E.    The Distinction Between Plaintiff's Job Duties (And Compensation)
           And The "Helpers" He Supervised. ............................................................ 7

IV.   LEGAL ARGUMENT AND AUTHORITIES ....................................................... 8

     A.    Summary Judgment Standard of Review/Issues to Be Determined............. 8

     B.    Plaintiff Was Properly Classified as Exempt from Overtime
           Under the Executive, Administrative, Combination and Highly-
           Compensated Employee Exemptions............................................................ 9

           1.    Plaintiff Worked As An Exempt Executive. .................................... 10

           2.    The Administrative Exemption Also Applies. ................................. 17

           3.    In the Alternative, Plaintiff Was Exempt from Overtime
                Due to The Nature of his Combined Exempt Duties. ...................... 22

           4.    Plaintiff Was Also Exempt As a Highly-Compensated
                Employee.......................................................................................... 23

     C.    In Any Event, Plaintiff Is Not Entitled to Liquidated Damages. ................ 24

V.    CONCLUSION ................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Aguirre v. SBC Commc'ns, Inc.*,
  No. CIV.A. H-05-3198, 2007 WL 2900577 (S.D. Tex. Sept. 30, 2007)...................... 14

*Allen v. Coil Tubing Servs., LLC*,
  846 F. Supp. 2d 678 (S.D. Tex. 2012) .................................................................. passim

*Boudreaux v. Swift Transp. Co.*,
  402 F.3d 536 (5th Cir. 2005) ........................................................................................ 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...................................................................................................... 8

*Cheatham v. Allstate Ins. Co.*,
  465 F.3d 578 (5th Cir. 2006) ...................................................................................... 21

*Dalheim v. KDFW-TV*,
  918 F.2d 1220 (5th Cir. 1990) ................................................................................ 9, 10

*Dewan v. M-I, L.L.C.*,
  No. H-15-1746, 2016 WL 695717 (S.D. Tex. Feb. 22, 2016).......................... 20, 21, 22

*Duffie v. United States*,
  600 F.3d 362 (5th Cir. 2010) ........................................................................................ 8

*Gellhaus v. Wal-Mart Stores, Inc.*,
  769 F. Supp. 2d 1071 (E.D. Tex. 2011)...................................................................... 15

*King v. Stevenson Beer Distrib. Co.*,
  11 F. Supp. 3d 772 (S.D. Tex. 2014) .................................................................... 11, 22

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir.1994) ......................................................................................... 8

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*,
  203 F.3d 326 (5th Cir. 2000) .................................................................................. 9, 21

*Lovelady v. Allsup's Convenience Stores, Inc.*,
  304 F. App'x 301 (5th Cir. 2008) .............................................................................. 16

*Martinez v. Refinery Terminal Fire Co.*,
  No. 2:11-CV-295, 2014 WL 582981 (S.D. Tex. Feb. 13, 2014).................................. 16

*Monroe Firefighters Ass'n v. City of Monroe*,
   600 F. Supp. 2d 790 (W.D. La. 2009) .......................................................... 19

*Self v. Meritage Homes Corp.*,
   No. CIV.A. G-11-0070, 2014 WL 2171468 (S.D. Tex. May 23, 2014) ................ 18, 19

*Wright v. City of Jackson, Miss.*,
   727 F. Supp. 1520 (S.D. Miss. 1989) .................................................... 24, 25

*Zannikos v. Oil Inspections (USA)*,
   Incorp., 605 F. App'x 349 (5th Cir. 2015) .................................................. 24

## Statutes

29 U.S.C. § 201 ............................................................................................ 1

29 U.S.C. § 207 ............................................................................................ 9

29 U.S.C. § 213(a)(1) .................................................................................... 9

29 U.S.C. § 216 .......................................................................................... 24

## Rules

Fed. R. Civ. P. 56(a) ..................................................................................... 8

## Regulations

29 C.F.R. § 541.100(a) ................................................................................ 10

29 C.F.R. § 541.100(a)(2) ........................................................................... 12

29 C.F.R. § 541.102 .................................................................................... 12

29 C.F.R. § 541.103(a) ................................................................................ 11

29 C.F.R. § 541.200(a) ................................................................................ 16

29 C.F.R. § 541.201(a) ................................................................................ 17

29 C.F.R. § 541.201(b) ................................................................................ 17

29 C.F.R. § 541.201(c) ............................................................................ 17, 19

29 C.F.R. § 541.202(a) ................................................................................ 20

29 C.F.R. § 541.202(b) ................................................................................ 21

29 C.F.R. § 541.203(c) ............................................................................... 17

29 C.F.R. § 541.601(a) ............................................................................... 23

29 C.F.R. § 541.601(b)(1) ........................................................................... 23

29 C.F.R. § 541.601(b)(3) ........................................................................... 23

29 C.F.R. § 541.700(a) ............................................................................... 11

29 C.F.R. § 541.700(b) ............................................................................... 12

29 C.F.R. § 541.708 (2013) ......................................................................... 22

Pursuant to Federal Rule of Civil Procedure 56, Defendant Red River Oilfield Services, LLC d/b/a Red River Technical Services LLC, (hereinafter "Defendant," "Red River," or the "Company") hereby submits its Memorandum in Support of its Motion for Summary Judgment to demonstrate that there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law.

## I.  STATEMENT OF NATURE AND STAGE OF THIS CASE

Plaintiff Harley Carranza (hereinafter "Plaintiff" or "Mr. Carranza") brings this lawsuit against Red River, his former employer, claiming he was misclassified as exempt during his employment, and is now owed overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  Discovery has been completed, and Red River seeks summary judgment on the sole claim in the case, Plaintiff's FLSA overtime claim.

## II. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Carranza was a highly-paid and specially-certified drill pipe inspector who supervised a crew performing pipe inspections for Red River's clientele.  While business was booming, Mr. Carranza was apparently pleased with his six-figure salary and supervisory job duties.  However, when the oil and gas industry experienced a downturn and Mr. Carranza was asked to agree to a temporary salary reduction, he resigned.  Shortly thereafter, he hired an attorney to bring this case for overtime pay.

For the reasons set forth herein, Mr. Carranza's overtime claim fails for numerous reasons.  Hired to lead Defendant's "South Texas Crew," Mr. Carranza selected his subordinates for hire at Red River.  Mr. Carranza was a true manager, who supervised both his designated crew and the individual inspection jobs.  As Mr. Carranza describes,

he "ran" the job. As such, he was properly exempt from overtime under the "Executive" overtime exemption to the FLSA.

Mr. Carranza was also exempt from overtime under the FLSA's "Administrative" exemption.  Indeed, part of the reason why Mr. Carranza was selected to supervise a crew was because he was the only certified pipe inspector on the jobs his crew worked, and thus the only person qualified to direct the hourly employees regarding inspection-related tasks.  He was also the only person on the crew with the proper skills and certification to operate, assess and analyze the results of the diagnostic computer software involved in the pipe inspection process.  Even Mr. Carranza's supervisor – who often worked hundreds of miles away – could not have performed Mr. Carranza's highly-technical job. As the only certified inspector, Mr. Carranza was naturally the "face of the company" while he and his crew performed pipe inspection work.  He was tasked with – and used his own independent judgment and discretion to – communicate with clients regarding the inspections, identify problems, and recommend solutions.  All these facts support his classification as exempt from overtime under the Administrative exemption.

Even were the Court to find the Executive or Administrative exemptions not completely supported by the summary judgment evidence, given the overall scope of Mr. Carranza's job, he should nevertheless be deemed exempt from overtime under a combination of these overtime exemptions.

Finally, and perhaps most importantly, Mr. Carranza is also exempt from overtime because he earned over $100,000 on an annual basis.  This undisputed fact independently

qualifies him as exempt from overtime under the FLSA's "Highly Compensated Employee" exemption.

This Court has found similar employees in similar positions exempt from overtime on multiple occasions.  The result should be no different here.  But even were the Court to find that a triable issue of fact as to Mr. Carranza's exemption status, there can be no dispute that in compensating Mr. Carranza as a salaried professional, Red River at all times acted in good faith, and that thus, there is no basis for a liquidated damages award.

## III.   SUMMARY OF UNDISPUTED MATERIAL FACTS

### A.   Red River Oilfield Services.

Red River performs premium tubular inspection and hard banding services for oil and gas drilling clients.  Declaration of Rick Blankenship ("Blankenship Decl."[1]) at ¶ 2. Among other things, these services allow Red River's clients to identify and correct potential problems with drilling rig operations early, before problems escalate and lead to potentially catastrophic results.  *Id.*

Leading the Company is Rick Blankenship, an oil and gas professional with industry experience of approximately 38 years.  *Id.*

### B.   Red River Hired Plaintiff Harley Carranza As A Salaried Professional To Run Its South Texas Operations.

Red River organizes its inspection staff into independent "teams" or "crews," each led by a certified drill pipe inspector, who typically supervises three hourly workers (though that number can vary between two and five crew members in addition to the

---

[1] The Declaration of Rick Blankenship is included as Exhibit A in Defendant's Summary Judgment Appendix filed concurrently herewith.

lead).  *Id.* at ¶ 3. Pipe inspection work is potentially available throughout the State of Texas, and surrounding areas, and Red River crews generally work in specific geographic regions.  *Id.*

In the first half of 2014, Mr. Carranza, then working for a Red River competitor, approached Defendant looking for an inspection position.  *Id.* at ¶ 4. He was offered the job of Lead Drill Pipe Inspector to run Red River's South Texas crew – a position similar to that which he was then performing – but with a slightly higher compensation package. Deposition of Harley Carranza ("Carranza Dep."[2]) at 13:14-18, 14:12-17, 38:12-16 and Dep. Exh. 2. That compensation package included a starting annual base salary of $75,000, plus an eight percent commission on each inspection job.  *Id.* at 14:12-17 and Dep. Exh. 2; *see also* Complaint at ¶ 4.  Mr. Carranza's annual compensation rate totaled well over $100,000.  *See* Carranza Dep. at 36:7-37:12, 55:6-56:3 and Exhs. 7, 8.

## C.  Plaintiff Hired The Remaining Members of the "South Texas Crew."

After his position was secured, Mr. Carranza requested that at least two employees he supervised at a former company be hired to work on his crew at Red River.  *Id.* at 11:10-12:14.  Mr. Carranza's personnel recommendations were approved essentially sight unseen, pending confirmation of standard pre-hire paperwork.  Blankenship Decl. at ¶ 8; Carranza Dep. at 12:8-14 ("Q: You asked Mr. Blankenship of Red River, 'Can I bring my crew with me' when you got hired on at Red River, correct?  A: Yes, I did.  Q:

---

[2] Relevant excerpts from the Deposition of Harley Carranza, along with relevant deposition exhibits, are included as Exhibit B in the Summary Judgment Appendix filed concurrently herewith.

And he allowed you to hire Pittard and Bernardino, correct?  A: Correct.…"), 25:5-11; *see also* Blankenship Decl. at ¶ 8.

Mr. Carranza continued to make hiring recommendations during his employment. *Id.*; Carranza Dep. at 26:2-5 ("Q: [W]ith respect to hiring, it appears that the company took your suggestions pretty strongly, correct? A: Yes.…").  Indeed, Mr. Carranza cannot recall a single example where he asked to hire someone at Red River and his request was not granted. *Id.* at 25:8-11; *see also* 36:4-25.

The Company likewise took Mr. Carranza's requests regarding discipline and termination-related issues.  Blankenship Decl. at ¶ 9.  Other than one occasion where Plaintiff suggested that an employee be fired and that employee was instead transferred to another crew, Plaintiff cannot recall ever having his recommendations rejected.  Carranza Dep. at 25:12-27:10.[3]

Mr. Carranza also recommended (if not negotiated), pay rates for his crew, which, like Mr. Carranza's hiring requests, were regularly granted. Carranza Dep. at 26:21-24 ("Q: [Y]ou never asked for a pay raise that wasn't given to the people on your crew, did you?  A: I guess not."); *see also id.* at 56:21-57:17 (Carranza ensured the Company used the correct pay rates for his crew and helped his crew members resolve paycheck issues).

---

[3] For example, Plaintiff's brother was employed at Red River for a short period and worked on Plaintiff's crew.  *See* Carranza Dep. at 82:1-83:18.  When his brother's performance was not meeting Plaintiff's expectations, Plaintiff warned him that, if he did not follow proper procedures, he would report it to the Company.  *Id.*  Red River authorized Plaintiff to proceed with termination, if he felt it was necessary, and to hire a replacement for his crew.  *Id.*  Plaintiff ultimately replaced his brother with Carter Pittard.  *Id.*; *see also* Blankenship Decl. at ¶ 9.

**D.**   **Plaintiff's Job Duties As A Lead Drill Pipe Inspector.**

Mr. Carranza's inspection duties required specialized training and certifications; some obtained before he worked with Red River, and some of which he earned during his employment there.  Carranza Dep. at 23:14-23, 50:23-51:14.

The pipe inspection work that Mr. Carranza performed was of a highly technical nature and involved sophisticated computer equipment.  *See* Carranza Dep. at 76:16-77:8, 57:18-58:5; Blankenship Decl. at ¶ 7. This equipment was stored and maintained on a specialized trailer that included a working office for Mr. Carranza to use while at a customer location.  *Id.*   During certain portions of the pipe inspection, Mr. Carranza would typically perform the inspection and supervise his crew from his office location, while his crew worked outside with the pipe being inspected.  *Id.*; *see also* Carranza Dep. at 71:25-72:14.

After carefully reviewing the inspection report, Mr. Carranza, as the main point of contact for the Company during the inspection job, would present the findings to the client directly, and then consult the client regarding proposed next steps.  *Id.* at ¶ 5; Carranza Dep. at 16:12-25, 105:14-23.  As set forth in his offer letter, Mr. Carranza had overall responsibility for "creating customer confidence and maintaining quality assurance and high levels of customer service on your jobs."  Carranza Dep. at 14:12-17 and Dep. Exh. 2.

**E.**    **The Distinction Between Plaintiff's Job Duties (And Compensation) And The "Helpers" He Supervised.**

Mr. Carranza is a certified pipe inspector.  His subordinates were not.  As such, he was the only one on the crew qualified to perform certain essential job functions. Carranza Dep. at 23:4-7.

Unlike the hourly employees he supervised, Mr. Carranza was issued a Company telephone, Company computer, and Company vehicle.  *Id.* at 15:24-25, 16:3-5, 18:10-11; Blankenship Decl. at ¶ 10. Also unlike his subordinates, Mr. Carranza was paid a salary and was eligible to earn commissions.  Carranza Dep. at 14:22-16:11, 18:1-15, 22:10-23:7.  He aptly summarized his supervisory role as follows:  "Basically, I was responsible for making sure the job ran ran."  *Id.* at 18:12-20; *see also* Blankenship Decl. at ¶ 5. Notably, especially during the time where Mr. Carranza worked primarily in the South Texas area, his own immediate supervisor was hundreds of miles away.  *See id.*; Carranza Dep. at 83:19-84:2.

Mr. Carranza was also responsible for day-to-day supervisory duties including but not limited to designating the start and end times for the workday, reporting the hours worked by his crew each day, communicating with the Company regarding the progress of the pipe inspection jobs he managed, and otherwise serving as a point of communication between his crew and the Company.  Blankenship Decl. at ¶ 6; *see also* Carranza Dep. at 18:21-19:3.  He was also responsible for ensuring that Red River's tools, machinery and equipment were in good working condition and that his crew was well supplied for pipe inspection jobs.  *See id.* at 48:25-49:8; Blankenship Decl. at ¶ 6.

## IV. <u>LEGAL ARGUMENT AND AUTHORITIES</u>

**A.**     **<u>Summary Judgment Standard of Review/Issues to Be Determined</u>.**

Summary judgment for Red River is appropriate "if [it] shows that there is no genuine dispute as to any material fact and [it] is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff "cannot survive a summary judgment motion by resting on the mere allegations of [his] pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Instead, he has the burden to "identify specific evidence in the record and articulate how that evidence supports [his] claim." *Id*. (internal quotations and citation omitted). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir. 2005) (*quoting Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (additional citations omitted)).

The issues to be ruled upon in Red River's Motion for Summary Judgment are: (1) whether Plaintiff was properly classified as exempt under the FLSA, such that he is not owed overtime under the FLSA, and (2) to the extent there is a triable, material issue of fact on the exemption issue, whether Red River demonstrated good faith and a reasonable

belief that it paid Plaintiff lawfully, such that Plaintiff should be precluded from an award of liquidated damages.

**B.**  **Plaintiff Was Properly Classified as Exempt from Overtime Under the Executive, Administrative, Combination and Highly-Compensated Employee Exemptions.**

The FLSA generally requires employers to pay employees overtime at one and one half times their regular rate for all hours worked over 40 in a workweek.  29 U.S.C. § 207.  If an employee works in a bona fide administrative, executive, or professional capacity, however, no overtime pay is required.  29 U.S.C. § 213(a)(1).  To determine whether a particular employee qualifies for these exemptions, courts first makes findings of historical fact.  *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) (*citing Dalheim v. KDFW-TV,* 918 F.2d 1220, 1226 (5th Cir. 1990)).  Based on those facts, it must then draw inferences "applying the regulations and interpretations promulgated under 29 U.S.C. § 213(a)(1)."  *Id.*  Finally, the court makes the "ultimate determination of whether an employee was exempt." *Id.*

Here, Red River properly classified Plaintiff as exempt from overtime.   In fact, his lead drill pipe inspector job qualified him for at least *four* FLSA exemptions: (1) the Executive exemption, (2) the Administrative exemption, (3) the Combination exemption, and (4) the Highly-Compensated Employee exemption.  As a result, Plaintiff's overtime claim fails as a matter of law and should be dismissed.

### 1.  Plaintiff Worked As An Exempt Executive.

First, Plaintiff's position falls squarely within the Executive exemption.  Assuming he/she is compensated at least $455 per week on a "salary basis," an employee qualifies as a exempt Executive when the following criteria are met: (a) the employee's primary duty is "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (b) the employee "customarily and regularly directs the work of two or more other employees"; and (c) the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a).   Here, Plaintiff cannot dispute that Red River compensated him at least $455 per week on a salary basis throughout his employment.  Carranza Dep. at 14:12-14, 95:12-19 and Dep. Exhs. 2, 16.   The remaining criteria are also easily satisfied.

> (a)   *The "South Texas Crew" was a recognized subdivision of Red River, and Managing it was Plaintiff's primary duty.*

Red River organizes inspection employees into independent "crews," each comprised of a lead drill pipe operator and at least two or three "helpers."  Blankenship Decl. at ¶ 3; *see also* Carranza Dep. at 68:12-18.   Crews perform their inspection functions at client worksites and typically work in a general geographical location.  Blankenship Decl. at ¶ 3.   Once established, however, each crew can accept jobs in various locations, depending on client needs and crew interest/availability.  *Id.*  For example, although Mr. Carranza's "crew" originally worked mostly in and around South

Texas, even after they began accepting jobs in West Texas, they continued to be a distinct unit operating independently from other Red River crews.  Carranza Dep. at 20:19-25, 99:16-25.

As a matter of law, a unit of business that has a "permanent status and function" is a recognized department or subdivision.  29 U.S.C. § 541.103(a).  "A recognized department or subdivision may move from place to place and the subordinate personnel may change, as long as the 'unit' has a continuing function." *Allen v. Coil Tubing Servs., LLC*, 846 F. Supp. 2d 678, 708 (S.D. Tex. 2012) *aff'd*, 755 F.3d 279 (5th Cir. 2014) (internal quotations and citations omitted).  Red River considered Plaintiff's South Texas Crew as a separate and independent unit with a permanent status and function. Blankenship Decl. at ¶ 3. 29 C.F.R. § 541.103(a); *King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 782 (S.D. Tex. 2014) (holding that a sales team was a recognized unit or subdivision of the company); *Allen*, 846 F. Supp. 2d at 708 (finding that field service units that moved from place to place to perform customer projects were a customarily recognized subdivision).

Next, FLSA regulations define "primary duty" as "principal, main, major or most important duty," which is determined "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  A non-exhaustive list of factors to be considered when determining the primary duty include: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's

salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.[4]" *Id.*  While the time spent on a duty is only one factor, an employee who spends more than 50% of his time on exempt work typically satisfies the primary duty test.  29 C.F.R. § 541.700(b); *Allen*, 846 F. Supp. 2d at 707.

Executive employees have management as a "primary duty."   29 C.F.R. § 541.100(a)(2). "Management" duties include but are not limited to "interviewing, selecting, and training of employees; . . . directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; . . . planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used  . . . ;  . . . providing for the safety and security of the employees or the property. . . ."  29 C.F.R. § 541.102.

As a lead drill pipe operator, Plaintiff worked as an "inspection supervisor running crews and jobs." Carranza Dep., at 14:12-15:23 and Dep. Exh. 2.  As the most senior inspection employee on each job, he "was the lead on the crew.  . . . [and] made sure everything got done." *Id.* at 96:20-97:2; *see also id.* at 16:12-14. In fact, he was the only employee in the crew certified to actually perform inspections. *Id.* at 23:4-7.   Mr. Carranza ran jobs and crews with little to no supervision; his supervisor Steve McKay

---

[4] Because of Plaintiff's supervisory position, Red River paid him more and provided him superior employment benefits than members of his crew. *See* Blankenship Decl. at ¶ 10. Red River also paid Plaintiff commissions, which were not paid to employees on his crew.  *Id.*; Carranza Dep. at 16:6-8. Plaintiff also had use of a Company vehicle and received more paid vacation time than his crew members. *Id.* at 53:8-54:12; Blankenship Decl. at ¶ 10.

often worked in separate location (often hundreds of miles away), and in any event, could not perform inspection work because he was not a certified inspector.[5]  *Id.* at 16:23-25 (Mr. Blankenship rarely visited inspection jobs), 83:19-85:2 (Mr. McKay lived 250 miles away from where the South Texas crew typically worked, but even when he visited the jobsite, Mr. Carranza performed the same supervisory duties he performed in Mr. McKay's absence), 102:4-9; *see also* Blankenship Decl. at ¶ 5.

Importantly, Plaintiff also had day-to-day supervisory control on his crew, as he:

- made the day-to-day decisions on inspection jobs (Carranza Dep. at 77:14-25);

- ensured the safety of crew and company equipment (*id.* at 48:25-49:6);

- maintained and drove the Company truck (unless he was too tired, in which case, he delegated driving to another authorized employee) (*id.* at 42:12-16, 49:20-24);

- maintained and submitted expense reports for his crew (and, unlike his crew members, he was issued a Company credit card) (*id.* at 52:13-53:4); and

- reported the hours to Red River for all employees on his crew (*id.* at 94:3-21).

When presented with similar facts in similar cases, this Court has had little difficulty in determining that the employees in question qualified for the Executive exemption.  For example, *Allen v. Coil Tubing Servs., LLC* involved overtime claims

---

[5]  In addition, the Company designates a senior representative responsible for each geographic operation. Blankenship Decl. at ¶ 3.  At various times, in various locations, it has utilized a senior salesperson, a senior operations manager, or a lead inspector to be the senior representative.  *Id.*  Mr. Blankenship considered Mr. Carranza to be the Company's senior representative in South Texas.  *Id.* at ¶ 4.

brought by a service supervisor who led defendant CTS's projects on client sites and supervised a group of service technicians.  In that case, this Court explained that:

> [a service supervisor's] managerial responsibilities while in the field performing CTS's projects for customers were extensive and of primary importance to CTS. For instance, as [a service supervisor], he was the senior CTS employee on all projects to which he was assigned in the field, whether on land or offshore, and [he] planned, assigned, and managed the work of the [service technicians] at the project sites to which he was assigned.

846 F. Supp. 2d at 707.  As a result, this Court concluded that plaintiff's primary duties were managerial.  *Id.*  The result should be the same here.

(b)    *Plaintiff directed the work of two or more full-time employees.*

Throughout his employment with Red River, Plaintiff directed the work of at least two other full-time hourly employees.  Carranza Dep. at 14:12-17, 68:9-18 and Dep. Exh. 2.  As the highest ranking on-site employee, Plaintiff supervised and directed the inspection work of others on his crew.  *Id.*  In fact, because he was the only crew member with a certification, Plaintiff was solely qualified to run the job and direct the work of his subordinates. *Id.* at 51:20-24. Plaintiff made the day-to-day decisions regarding the work of his employees, such as when breaks would be taken and the order and manner in which work should be performed.  *Id.* at 77:18-25.  In short, on every job that Plaintiff ran, he "exercised meaningful discretionary oversight" over the members of his crew. *Aguirre v. SBC Commc'ns, Inc.*, No. CIV.A. H-05-3198, 2007 WL 2900577, at *24 (S.D. Tex. Sept. 30, 2007), *aff'd*, 299 F. App'x 315 (5th Cir. 2008) (granting summary judgment on overtime claims where defendant showed, in part, that plaintiff directed work of subordinates by ensuring that they complied with policies and protocols); *see*

*also Allen*, 846 F. Supp. 2d at 709 (determining that plaintiff satisfied this element, as the highest ranking employee on field projects who ran the projects and supervised at least two employees).

> (c)   *Plaintiff's recommendations regarding the employment of his subordinates were given particular weight.*

Finally, Red River gave particular weight to Plaintiff's recommendations for employment actions for his crew members.  In determining whether this prong is met, Courts consider factors such as "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon."  29 U.S.C. § 541.105; *Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071, 1082 (E.D. Tex. 2011). An employee's recommendations can still have "particular weight," even if a more senior manager makes the final decision.  *Id.* (explaining that few employees would be exempt if the exemption were limited to final decisionmakers).

There is no question here that Red River gave particular weight to Plaintiff's recommendations, because it almost always followed them.  *See, e.g.,* Blankenship Decl. at ¶ 8. Plaintiff cannot recall a single time when his recommendations as to whom to hire were not followed.  Carranza Dep. at 25:8-11.  When he recommended a pay raise for a member of his crew, that recommendation was also followed.  *Id.* at 27:5-10.  In fact, the Company recognized that Plaintiff was in the best position to make recommendations regarding hiring, firing, and discipline since Plaintiff's supervisor, Mr. McKay, was not a

certified inspector, and was not in a position to regularly observe the work of the helpers on the South Texas Crew, and on most occasions, was hundreds of miles away.  *See* Carranza Dep. at 85:3-11, 102:4-9; Blankenship Decl. at ¶ 5.  In that Red River gave particular weight to Plaintiff's recommendations regarding his crew, this prong of the Executive exemption is met.  *See Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-295, 2014 WL 582981, at *6 (S.D. Tex. Feb. 13, 2014) (plaintiffs were exempt executives where their recommendations regarding subordinates were always considered and heavily relied upon).[6]

### 2.  The Administrative Exemption Also Applies.

Plaintiff's duties also qualify him for the Administrative exemption from overtime. Again, assuming (as is undisputed here),[7] an employee earns at least $455 per week on a salary basis, he/she qualifies for the Administrative exemption if: (a) he performs the primary duty of "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (b) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).  Plaintiff's job at Red River satisfies both these criteria.

---

[6]  Plaintiff recalled one instance when he recommended terminating the employment of a member of his crew, but instead of terminating his employment, Red River moved him to another crew. Carranza Dep. at 25:12-24. That sole instance, however, does not deprive Red River of the exemption.  The Company need not take Plaintiff's recommendation *every* time in order to show that his opinions were given "particular weight." *See, e.g., Lovelady v. Allsup's Convenience Stores, Inc.*, 304 F. App'x 301, 306 (5th Cir. 2008) (affirming dismissal of overtime claims and finding that plaintiffs' recommendations were given particular weight even though their recommendations were not followed in one circumstance).
[7] *See* Carranza Dep. 14:12-17, 55:6-56:3 and Dep. Exhs. 2, 7, and 8.

(a) *Plaintiff performed office or non-manual work directly related to the general business operations of Red River and its customers.*

Plaintiff's position required him to perform office-based, non-manual work directly related to Red River's (and its customer's) general business operations. Regulations distinguish between administrative work, which "relate[s] to assisting with the running or servicing of the business" from production work, such as "working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).  Such administrative work includes activities in the areas such as quality control, purchasing, procurement, safety and health, personnel management, human resources, employee benefits, and labor relations.   29 C.F.R. § 541.201(b). Employees also perform exempt administrative work when they provide such work to an employer's customers, as Plaintiff did here.  29 C.F.R. § 541.201(c).

As an initial matter, DOL regulations specifically recognize that an employee – like Plaintiff – "who leads a team of other employees assigned to complete major projects for the employer . . . generally meets the duties requirements for the administrative exemption. . . . "  29 C.F.R. § 541.203(c).[8]  Here, Plaintiff performed the precise role the regulation describes.   According to Red River, Plaintiff's job was "running crews and jobs."  *Id.* at p. 14:12-17 and Dep. Exh. 2. Indeed, Plaintiff himself testified that "I was responsible for making sure the job was ran [sic]" and "I was the lead on the crew. . . . I made sure everything got done."  *Id.* at 18:16-20, 96:23-97:1.

---

[8] This is true, even if the employee does not have supervisory authority over the other employees, which Plaintiff did. 29 C.F.R. § 541.203(c).

(i)    *Non-manual work*

Non-manual inspection and management work were Plaintiff's primary duties. Specifically, his duties involved working on a laptop, interpreting data gathered from inspection tools, drafting reports, directing the work of other crew members, and communicating with customers and the Company. *Id.* at 69:20-22, 71:22-74:15, 77:1-8; Blankenship Decl. at ¶ 5. Even if Plaintiff performed occasional manual work alongside the crew he supervised, this would not disqualify him from the Administrative exemption, because such work was not his primary, most important duty.

Red River described Plaintiff's key duties as "creating customer confidence and maintaining quality assurance and high levels of customer service on your jobs." Carranza Dep. at 14:12-17 and Dep. Exh. 2.  Mr. Carranza characterized his job as leading the crew and making sure everything got done. *Id.* at 96:23-97:1. Any manual work he performed was minor and incidental to his inspection and management responsibilities and was clearly not his most important job duty. *See* Blankenship Decl. at ¶ 7. *Self v. Meritage Homes Corp.*, No. CIV.A. G-11-0070, 2014 WL 2171468, at *4 (S.D. Tex. May 23, 2014), appeal dismissed (Dec. 2, 2014) (holding that a construction manager who performed some "collateral manual tasks" nonetheless was exempt under the administrative exemption because such tasks were not his primary duty).

(ii)    *Directly related to Red River's and its client's general business operations*

Plaintiff's work directly related to Red River's general business operations. Plaintiff was a key representative of Red River while he was on the job site. Carranza

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – Page 18

Dep. at 105:14-23.   He was the most senior member of the crew, responsible for interfacing with clients, describing inspection result with them, and recommending further courses of action.   *Id.* at 16:20-22, 105:4-23.   Plaintiff's job involved quality control, customer relations, and customer satisfaction, and required him to "creat[e] customer confidence and maintain[] quality assurance." *Id.* at 14:12-17 and Dep. Exh. 2. Plaintiff was also the employee responsible for the safety and security his crew and company equipment and was entrusted with a Company credit card.  *Id.* at 48:25-49:24, 52:13-53:4. These duties undoubtedly relate to Red River's general business operations. *See, e.g., Self*, 2014 WL 2171468, at *4 (finding that construction manager job involving customer relations, customer satisfaction, and quality control qualified for the administrative exemption); *Monroe Firefighters Ass'n v. City of Monroe*, 600 F. Supp. 2d 790, 804 (W.D. La. 2009) (holding that district and deputy fire chiefs are administratively exempt in part because they must ensure the safety and security at the fire stations under their command).

There is no question but that Plaintiff performed work directly related to the general business operations of Red River's customers – oil and gas drilling companies. Inspection work required Plaintiff to perform various types of testing on client pipes to ensure that the drilling was safe and efficient.  Blankenship Decl. at ¶ 11.  In doing so, Plaintiff consulted with Red River's clients, examining the pipe and advising them when certain repairs were needed. *Id. See* 29 C.F.R. § 541.201(c) (employees acting as consultants to an employer's clients can qualify as exempt).  As Mr. Carranza explained,

the inspections he performed were important and were the "core" of Red River's (and their clients) business.  *See* Carranza Dep. at 70:2-71:5.

Recently, this Court found the plaintiffs in *Dewan v. M-I, L.L.C.* to be administratively exempt where the employees – like Mr. Carranza here – worked on oil and gas client sites testing and monitoring mud quality on oil drilling equipment. No. H-15-1746, 2016 WL 695717, at *31 (S.D. Tex. Feb. 22, 2016). The Court determined that, because the employees spent nearly all of their working time "related directly to continually monitoring the mud for quality control . . . [and] acted as advisors or consultants to [defendant's] customers," that they were exempt. *Id.*  So too here, Plaintiff's work inspecting pipe for Red River's oil and gas clients directly relates to their general business operations.

    (b)   *Plaintiff's exercised discretion and independent judgment regarding matters of significance.*

There can be little doubt that – as the sole certified inspector on all of his inspection jobs – Plaintiff necessarily exercised discretion and independent judgment over matters of significance, which "involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).   In deciding whether a particular employee meets this standard, factors to consider include "whether the employee carries out major assignments in conducting the operations of the business; . . . whether the employee has authority to commit the employer in matters that have significant financial impact . . . ; whether the employee provides consultation or expert advice to management.

. . ."   29 C.F.R. § 541.202(b). Employees can exercise discretion and independent judgment even where they consult manuals and guidelines in the course of making decisions.  *See, e.g., Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006) (affirming a finding that insurance adjusters exercise discretion and independent judgment, even though they follow certain practices and procedures).

Plaintiff exercised discretion and independent judgment in running inspection jobs and managing his crew.  No more senior employee directed his work or oversaw his decisions regarding his inspection jobs. Blankenship Decl. at ¶ 5.  For example, Plaintiff independently determined when client equipment he was inspecting required repair, without needing to consult a superior. Carranza Dep. at 76:5-15.  In fact, Red River's clients actually implemented Plaintiff's recommendations regarding repairs absent any prior notice or approval of Red River.  *Id.*; Blankenship Decl. at ¶ 11. *See Dewan*, 2016 WL 695717, at *31 (finding that, since plaintiff's recommendations were acted on by the client even before defendant received the relevant reports, plaintiffs met the third prong of the administrative exemption).

Additionally, Plaintiff's judgment and decisions were related to matters significant to Red River.  Plaintiff's decisions regarding his inspections jobs went to the core of Red River's business and were essential to its general business operations. Blankenship Decl. at ¶ 5.  As the leader of each inspection job, Plaintiff's determinations regarding the integrity of client equipment were at the heart of the services Red River provides. *Lott* 203 F.3d at 332 (plaintiff's work as an office manager require the exercise of discretion

and independent judgment as they were directly related to the company's policies and business operations).

Plaintiff's discretion related not only to matter of importance to Red River, but also to its clients.  The safety and efficiency of drilling equipment is integral to their operations. A defective pipe, if not detected early, can require extensive (and expensive) repairs. Blankenship Decl. at ¶ 11.  For example, bad pipe tubes can fall "downhole" and shut down operations, requiring repair or "fishing" operations that can cost hundreds of thousands of dollars in lost drilling equipment and rig time.  *Id.*

### 3. In the Alternative, Plaintiff Was Exempt from Overtime Due to The Nature of his Combined Exempt Duties.

In the unlikely circumstance that the Court finds a triable issue of fact as to whether Plaintiff satisfies the primary duty test of either the Executive or Administrative exemptions, Plaintiff nonetheless still qualified for the FLSA's "combination exemption."  Such exemption applies when an employee's primary duties are a combination of duties for several exemptions, in which case regulations permit employers to "cobbl[e] together" exempt duties from separate exemptions to meet the primary duty test.  29 C.F.R. § 541.708 (2013); *King*, 11 F. Supp. 3d at 786.  This exemption applies "'where (1) an employee performs more than one type of work that would be exempt except that (2) neither type of work alone can be termed the employee's primary duty, but (3) all of the putatively exempt work taken together constitutes the employee's primary duty.'" *Dewan*, 2016 WL 695717, at *13 (*citing Dalheim v. KDFW-TV,* 918 F.2d 1220, 1232 (5th Cir. 1990)).  Thus, even if Plaintiff's job duties do not fully satisfy either the

administrative or executive exemptions, Plaintiff is still exempt from overtime pay because, considered altogether, his duties qualify for the combination exemption.

### 4. Plaintiff Was Also Exempt As a Highly-Compensated Employee.

In addition to being an Executive and Administrative employee, Plaintiff also qualified as a highly-compensated employee. The highly-compensated exemption requires employees to: (1) receive at least $100,000.00 in total annual compensation and (2) perform "any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. § 541.601(a). The $100,000 threshold may include commissions, nondiscretionary bonuses, and other nondiscretionary compensation so long as the employee receives at least a $455 weekly salary. 29 C.F.R. § 541.601(b)(1).[9] Undisputed evidence here establishes that Plaintiff worked as a highly-compensated employee.

Plaintiff earned a monthly salary along with guaranteed commissions and a nondiscretionary $5,000 stay bonus. Carranza Dep. at 14:12-15:8, 36:17-37:12 and Dep. Exh. 2. It is undisputed that Red River paid Plaintiff at a rate of well over $100,000 per year. In 2015, Plaintiff exceeded the $100,000 threshold in 11 months; earning $117,225.83 from January to November. *Id*. at 55:16-56:3 and Dep. Exh. 8. In 2014, when Plaintiff worked from June through December, Red River paid him a total of $74,308.63 – or approximately $127,386.22 per year. *Id*. at 55:6-13 and Dep. Exh. 7.

---

[9] If an employee works for less than a full year, the employee still qualifies if he is paid a "*pro rata portion*" of the $100,000 based upon the number of weeks he worked. 29 C.F.R. § 541.601(b)(3).

Additionally, as discussed in detail above, Plaintiff performed all the duties of an Executive and/or Administrative professional.   As such, Plaintiff plainly meets the criteria for the Highly-Compensated Employee exemption, and his overtime claim must be dismissed.   *See, e.g., Zannikos v. Oil Inspections (USA), Incorp.*, 605 F. App'x 349, 459-60 (5th Cir. 2015) (plaintiff worked as a highly-compensated employee when he earned over $100,000 and performed duties of the administrative exemption); *Allen,* 846 F. Supp. 2d at 710-12, 715 (granting summary judgment on an overtime claim because plaintiff was a highly-compensated employee).

## C.      In Any Event, Plaintiff Is Not Entitled to Liquidated Damages.

Even if the Court determines that Plaintiff does not qualify under any exemption, summary judgment is still appropriate as to his liquidated damages claim.   Although 29 U.S.C. § 216 calls for liquidated damages for prevailing plaintiffs, courts can deny such an award where a defendant acted in good faith and had a reasonable belief that its actions did not violate the FLSA.   *Allen*, 846 F. Supp. 2d at 714. Court discretion in the area of liquidated damages is meant to mitigate the harshness of the FLSA's strict liability, along with its double damages. *Id.*   An employer shows a lack of good faith when it "knows, or has reason to know, that his conduct is governed by the [Act]." *Wright v. City of Jackson, Miss.*, 727 F. Supp. 1520, 1522 (S.D. Miss. 1989) (declining to award liquidated damages).

Compensating highly-paid crew leaders like Plaintiff as exempt is standard in the pipe inspection industry.   Blankenship Decl. at ¶ 4.   In fact, Plaintiff's former employer paid him slightly less than Red River and also classified him as exempt.   Carranza Dep. at

38:12-16, 24:8-15.  Plaintiff never complained to Red River about not receiving overtime pay and did not even believe he was entitled to it until *after* he left employment.  *Id.* at 78:1-15.  Even Plaintiff does not believe anyone at Red River was purposely withholding overtime pay from him, knowing he was entitled to it.  *Id.* These circumstances satisfy Red River's burden to show that it acted in good faith and with a reasonable belief that it did not violate the FLSA.  *See Allen*, 846 F. Supp. 2d at 714 (finding liquidated damages were not appropriate even where defendants failed to seek legal advice regarding overtime and some of its classification decisions were incorrect).

## V. <u>CONCLUSION</u>

While working at Red River, Plaintiff ran inspection jobs on client work sites and managed a crew of three employees.  He had no doubt when he took the job, nor when he was working in it, that he was being paid appropriately.  But after earning over $190,000 in 18 months, Mr. Carranza now asks this Court to award him tens of thousands more in back overtime pay. In that he qualifies for *four* separate exemptions, Plaintiff's FLSA claim should be dismissed with prejudice.   But even if his claim somehow survives dismissal on summary judgment, the Court should find that Red River acted in good faith and had a reasonable belief that Mr. Carranza's position was exempt and should award summary judgment on his liquidated damages claim.

Date:  December 21, 2016

Respectfully submitted,

*/s/ Marcia N. Jackson*
Marcia N. Jackson
State Bar No. 24008411
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
Email: marcia.jackson@wickphillips.com

Lauren K. Drawhorn
State Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
Email: lauren.drawhorn@wickphillips.com

*ATTORNEYS FOR DEFENDANT RED
RIVER OILFIELD SERVICES, LLC d/b/a
RED RIVER TECHNICAL SERVICES LLC*

## CERTIFICATE OF SERVICE

On December 21, 2016, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

*/s/ Marcia N. Jackson*
Marcia N. Jackson